1   GEORGE S. CARDONA
    Acting United States Attorney
2   THOMAS P. O'BRIEN
    Assistant United States Attorney
3   Chief, Criminal Division
    BRIAN R. MICHAEL (Cal Bar No. 240560)
4   JOSEPH N. AKROTIRIANAKIS (Cal Bar No. 197971)
    Assistant United States Attorneys
5        1500 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-0340/(951) 276-6145
7        Facsimile: (213) 894-3713/(951) 276-6202
         E-mail:    brian.michael@usdoj.gov
8                   joseph.akrotirianakis@usdoj.gov

9   Attorneys for Plaintiff
    UNITED STATES OF AMERICA

10

                    UNITED STATES DISTRICT COURT
11
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
                          EASTERN DIVISION
13

    UNITED STATES OF AMERICA,    )    No. ED CR 04-42(A)-VAP
14                               )
                  Plaintiff,     )    GOVERNMENT'S OPPOSITION TO
15                               )    DEFENDANT'S MOTION TO EXCLUDE
             v.                  )    EXPERT WITNESS TESTIMONY;
16                               )    MEMORANDUM OF POINTS AND
    JAMES SANDERS,               )    AUTHORITIES; DECLARATION OF
17                               )    BRIAN R. MICHAEL
                  Defendant.     )
18  _____  )    Trial Date: May 8, 2007
                                      Trial Time: 8:30 a.m.
19

20       Plaintiff United States of America, by and through its

21  counsel of record, Assistant United States Attorneys Brian R.

22  Michael and Joseph N. Akrotirianakis, hereby files its opposition

23  to defendant James Sanders's Motion to Exclude Expert Witness

24  Testimony, filed on or about April 23, 2007.  This opposition is

25  based on the attached memorandum of points and authorities, the

26  declaration of Brian R. Michael, all the files and records in

27  this case, and such further evidence and argument as may

28  hereafter be adduced before or at the time of the hearing on this

motion, or that the Court may otherwise wish to consider and direct the government to submit.

Dated: April 27, 2007        Respectfully submitted,

                             GEORGE S. CARDONA
                             Acting United States Attorney

                             THOMAS P. O'BRIEN
                             Assistant United States Attorney
                             Chief, Criminal Division


                                   /S/
                             _____
                             BRIAN R. MICHAEL
                             Assistant United States Attorney

                             JOSEPH N. AKROTIRIANAKIS
                             Assistant United States Attorney

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.

<u>INTRODUCTION</u>

On or about April 23, 2007, defendant James Sanders ("defendant") filed a Motion to Exclude Expert Witness Testimony ("Def. Mot.") from the upcoming trial in this matter. Specifically, defendant seeks an order excluding the testimony of the following witnesses whom the government gave notice to defendant may testify at trial on the following topics:

(1) Bruce W. Pixley to testify about the functioning, uses, and capabilities of the internet, including, an explanation of the use of email, instant messaging, chat rooms, and web groups, as well as the downloading and uploading of files and the posting of shared files;

(2) Supervisory Special Agent ("SSA") James T. Clemente with the Federal Bureau of Investigation's ("FBI") Behavioral Analysis Unit to testify about "grooming," <u>i.e.</u>, the contacting and gaining the trust of a child victim and, at times, the parent(s) and/or guardian(s), in order to gain access to the child for the purpose of engaging in, or attempting to engage in, sexual or other inappropriate acts with the child;

(3) Immigration and Customs Enforcement ("ICE") Special Agent ("SA") James Moran to testify about the forensic review and analysis of the defendant's laptop computer, compact discs, floppy disks and other digital media, as well as the results of that review and analysis, including the recovered evidence; and

1   (4) Additional ICE agents to testify about the recovery

2   of transcripts of instant message (or "IM" or "chat")

3   sessions from the computer of Seth Bekenstein, and to

4   testify regarding the recovery of similar transcripts

5   from the computer of Randall Martin.

6       Because the government has provided timely notice to

7   defendant of the above witnesses – only two of whom, the

8   government submits, require expert notice pursuant to Rule 16 –

9   the defendant's motion should be denied.[1]

10                              II.

11                           ARGUMENT

12  A.   The Government Has Given Timely and Adequate Notice

13      Defendant claims that the government has given late, as well

14  as inadequate, notice of likely expert testimony at trial.  (Def.

15  Mot. at 3-5, 9.)  His assertion, however, is belied by the facts

16

17       [1]  Defendant also claims in his motion that he was somehow
    provided with untimely notice that the Victim's father may
18  testify at trial (Def. Mot. at 3, 5, 8) and, thus, by
    implication, seems to assert that this testimony should also be
19  excluded.  This claim wholly lack merit.  First, the government
    is not required to provide notice of fact witnesses beyond that
20  required by the Court's Trial Order.  Second, as defendant
    acknowledges (Def. Mot. at 8), the government never represented
21  that it was not going to call Victim's father as a witness, just
    that it was not going to call the minor Victim to testify and,
22  thus, defendant made a faulty assumption about the father.  In
    any event, the government, beyond the scope of its disclosure
23  obligations and well in advance of the May 8, 2007 trial date,
    voluntarily gave notice to defendant on April 17, 2007 that the
24  father may testify – soon after the government confirmed that the
    father would testify.  With this notice, the government also
25  provided defendant, again voluntarily and beyond the scope of its
    obligations, with a copy of a recorded interview of the father
26  conducted by New Mexico officials in June 2001.  Finally, it is
    hardly surprising that the government would call as a witness the
27  Victim's father in case that has included, since June 2006,
    allegations of sex abuse of Victim by defendant while visiting
28  the Victim's family.  There is absolutely no basis to exclude the
    father's testimony, nor is there any prejudice to defendant.

1  and unsupported by the applicable law and rules.

2      On April 9, 2007, the Court denied defendant's request for a

3  continuance and ordered the parties to appear for trial on May 8,

4  2007.  Shortly thereafter, on April 17, 2007, <u>three weeks before

5  trial</u>, the government gave notice to defendant that it intended

6  to call ICE SA James Moran to testify regarding the forensic

7  review and analysis of the defendant's laptop computer, compact

8  discs, floppy disks and other digital media, as well as the

9  results of that review and analysis, including the recovered

10 evidence.  The government also gave notice that it intended to

11 call another ICE agent to testify regarding the recovery of

12 transcripts of IM or "chat" sessions from the computer of co-

13 conspirator Bekenstein and a second witness, likely an ICE SA, to

14 testify regarding the recovery of similar transcripts from the

15 computer of co-conspirator Martin.

16     That same day, the government also gave notice that it

17 expected to call an expert witness to testify about the

18 functioning, uses, and capabilities of the internet, including,

19 among other things, an explanation of the use of email, instant

20 messaging, chat rooms, and web groups, as well as the downloading

21 and uploading of files and the posting of shared files (an

22 "internet expert"), as well as another expert witness to testify

23 about "grooming," <u>i.e.</u>, the contacting and gaining the trust of a

24 child victim and, at times, the child victim's parent(s) and/or

25 guardian(s), in order to gain access to the child for the purpose

26 of engaging in, or attempting to engage in, sexual or other

27 inappropriate acts with the child victim (a "grooming expert").

28     In that same notice, the government also indicated that it

had not yet determined, finally, who would be called to testify concerning the above topics, but that the identities and qualifications of the witnesses would be disclosed immediately upon a final determination and that the April 17 notice was being provided so that defendant had the maximum amount of notice regarding the topics upon which the government then contemplated presenting expert testimony.

Two days later, on April 19, 2007, still well in advance of trial, the government: (1) provided defendant with a copy of SA Moran's resume; (2) advised defendant that Pixley would be the internet expert and provided defendant with a copy of his resume, as well as brief biography; and (3) advised defendant that FBI SSA Clemente would be the grooming expert and indicated that his resume would be forthcoming in the near future.  The next day, on April 20, 2007, his resume was provided to defense counsel.

On or about April 23, 2007, defense counsel filed his motion to exclude the expert testimony.  During a subsequent telephone conversation with government counsel, defense counsel stated that he believed defendant was entitled to more information regarding the government's expected expert testimony.  During that conversation, government counsel advised defense counsel that neither Bixley nor FBI SSA Clemente had reviewed the evidence in this case, nor prepared expert reports.  The government further advised defense counsel that these witnesses would not be offering opinions, but rather, providing background information based on their specialized knowledge that would be useful to the jurors regarding the internet and the concept of "grooming."

Thereafter, although it is the government's position that it

has provided adequate expert disclosure pursuant to the applicable law and rules, the government sent to defense counsel, on April 26, 2007, the following additional information: (1) copies of 3 slides that FBI SSA Clemente has used in prior presentations regarding "grooming;" and (2) excerpts from an article that FBI SSA Clemente has reviewed, amongst other materials, in developing his expertise on "grooming" and that contains information that he will likely testify about at trial.

On April 27, 2006, the government informed defendant that ICE SA John Owen would testify about the recovery of chat transcripts from Bekenstein's computer, and that retired ICE SA Ralph Pendleton would testify about the recovery of similar transcripts from Martin's computer.  The government also advised defendant that although the notice was styled as expert notice, as with the prior notices regarding ICE SA James Moran, it is the government's position that these witnesses will be testifying as percipient fact witnesses and that expert notice is not required.

Of note, in April 2005, the government produced to defendant copies of multiple reports prepared by ICE SA Moran pertaining to his forensic review of defendant's media.  More recently, on April 27, 2007, the government produced a copy of a report prepared by retired ICE SA Pendleton regarding the forensic review of Martin's computer.

Accordingly, the government submits that it has fully complied with its expert disclosure obligations in a timely

manner and defendant has suffered no prejudice.[2]

B.   Internet and Grooming Experts

As defendant notes, "[t]his is a fairly old case" (Def. Mot. at 5).  Indeed, the initial indictment alleging one count of possession of child pornography was filed in June 2004 and the vast majority of discovery was produced – and all of the physical evidence made available for inspection – more than two years ago. Plus, although more recent, the first superseding indictment ("indictment") was filed in June 2006, with its three additional counts including allegations that defendant used a computer and the internet during the course of the charged conspiracy to possess child pornography, as well as that defendant traveled with intent to engage in sex with, and then committed aggravated sexual abuse of, a 7-year old boy.

Yet, with his motion, defendant indicates that it was somehow impossible for him to even contemplate (Def. Mot. at 5) that the government would seek to provide expert testimony regarding the internet, its functions and how it operates in a case where the allegations in the indictment, as well as the discovery and other physical evidence, make quite clear that defendant's use of the internet is a central issue in this case. Similarly, defendant expresses surprise (Def. Mot. at 8) that

---

[2]  Defendant's reliance on United States v. Barrett, 703 F.2d 1076 (9th Cir. 1983), is misplaced, as well as supports the government's position.  In that case regarding a bank robbery, the government provided defendant with notice of a photographic expert only eight days before trial, and then produced the results of the expert's tests, which identified defendant, just two days before trial.  Id. at 1081.  Here, the government has given much earlier notice and does not intend to offer tests results or opinion testimony, particularly that go to an issue such as defendant's identity.

government would offer expert testimony regarding grooming in a case in which it is alleged that defendant, an adult, intended to, and actually did and attempted to, sexually abuse the 7-year old Victim.  Indeed, grooming is a well-documented and common theme often addressed in the context of child sex abuse case, including at trial.  Moreover, the facts of this case – as demonstrated by defendant's numerous statements about the activities he engaged in and intended to engage in with Victim and other young boys, sexual and otherwise – demonstrate a clear pattern of grooming that is plainly apparent from a review of the evidence in this case.

In any event, the government submits that defense counsel has been provided with sufficient time to evaluate the government's likely expert witnesses on these topics, to determine whether defendant should retain his own expert(s), and then find and prepare such experts to testify at trial.  This is particularly true in a case such as this, where the allegations and relevant issues have been known to counsel for a long time.

Of note, in his motion, defendant does not assert that the intended expert testimony regarding the internet and grooming are improper in this case, just that he has not been provided with timely notice and that, because of his other work demands, he does not have sufficient time to prepare for such testimony.  Of course, counsel's other obligations should not be used to penalize the government where it seeks, as it does here, to offer appropriate expert testimony that will be useful for the jurors.  Indeed, if "specialized knowledge" will assist the trier of fact in understanding the evidence or determining a fact in issue, a

qualified expert witness may provide opinion testimony on the issue in question.  See Fed. R. Evid. 702.  To be admissible, expert testimony must satisfy only two basic requirements: (1) the testimony must be helpful to the trier of fact; and (2) the witness must be qualified to deliver the testimony based on his knowledge, skill, experience, training, or education.  Exum v. General Elec. Co., 819 F.2d 1158, 1163 (D.C. Cir. 1987); 4 Weinstein & Berger, WEINSTEIN'S FEDERAL EVIDENCE, § 702.06[2], at 702-36 (2d ed. 1997) ("WEINSTEIN").  In this context, "helpful" means "relevant."  See WEINSTEIN, § 702.03[14], at 702-13 ("The helpfulness test requires an ordinary relevance analysis.").

Finally, to the extent that defendant now believes it is necessary for him to call other fact witnesses to establish that he did not groom Victim, there is certainly nothing that precludes defendant from so doing, especially when the witnesses he indicates he may call have been known to him for years.  The suggestion (Def. Mot. at 8-9) that it is the government's fault that defendant may be late in tracking down out-of-state witnesses, or that the government had an obligation to advise defendant that he may want to call certain witnesses at trial, is plainly ridiculous.

C.   ICE Forensic Agents

Although the government's notice regarding the three ICE agents expected testimony about the forensic review of defendant's digital media, as well as the recovery of chat transcripts from two co-conspirators' computers, was styled as "expert notice," this intended testimony does not actually require disclosure under Rule 16.  Indeed, these ICE agents – all

forensic computer examiners – will merely provide percipient fact testimony about their examinations of computers and other digital media and the recovery of evidence arising from these reviews.  In so doing, these agents may also provide related testimony reflecting their "specialized knowledge" of relevant matters, such as basics on the function, organization, and related aspects of computers, and computer files and programs. These agents may also provide testimony regarding their use and knowledge of computers, relevant programs, and related matters.

Such testimony simply does not qualify as expert testimony, although the government has nonetheless provided defendant with advance notice regarding the identity of the witnesses and their likely testimony.  Moreover, even if these witnesses are deemed "expert witnesses" requiring disclosure under Rule 16, defendant has been given timely notice – as discussed above.  Defendant was also provided, long ago, copies of ICE SA Moran's reports regarding his forensic review of defendant's computer and other digital media (as well as his resume).  More recently, but still in a timely manner, the government also produced (at the recent request of defense counsel) a report prepared by now retired ICE SA Pendleton regarding his forensic review of Martin's computer, which resulted in the recovery of certain chat transcripts.[3]

---

[3]  At defense counsel's recent request, government counsel is trying to determine whether a report exists documenting the recovery of the chat transcripts from Bekenstein's computer.  If such a report exists, the government will promptly produce it to defendant.  Of note, copies of these transcripts were produced years ago and only very recently did defendant make this request. Furthermore, to the extent there is no report, the government is prepared to make ICE SA Owen available to defense counsel prior to trial to inquire about his recovery of these transcripts.

1    Finally, having just recently confirmed that ICE SA Owen and

2  retired ICE SA Pendleton will be available to testify at trial,

3  the government expects to produce their resumes to defendant in

4  the very near future (although, in the mean time, the government

5  will make them available to defense counsel for inquiry into

6  their qualifications and experience).

7                                III.

8                            CONCLUSION

9    For the foregoing reasons, the government respectfully

10  requests that the Court deny defendant's motion to exclude expert

11  witness testimony at trial.

<u>DECLARATION OF BRIAN R. MICHAEL</u>

I, BRIAN R. MICHAEL, declare as follows:

1.    I am an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Central District of California.  I, along with AUSA Joseph N. Akrotirianakis, represent the government in this case.

2.    On April 17, 2007, government counsel advised defendant by letter (which was faxed to defense counsel) that the Victim's father may testify at trial in this case.  This letter was sent shortly after government counsel confirmed that the father would testify at trial.  With this letter, enclosed was a copy of a recorded interview of the father conducted by New Mexico officials in June 2001.

3.    On April 17, 2007, government counsel gave notice to defendant by letter (which was faxed to defense counsel) that the government intended to call Immigration and Customs Enforcement ("ICE") Special Agent ("SA") James Moran to testify regarding the forensic review and analysis of the defendant's laptop computer, compact discs, floppy disks and other digital media, as well as the results of that review and analysis, including the recovered evidence.  The government also gave notice in that letter that it intended to call another ICE agent to testify regarding the recovery of transcripts of IM or "chat" sessions from the computer of co-conspirator Bekenstein and a second witness, likely an ICE SA, to testify regarding the recovery of similar transcripts from the computer of co-conspirator Martin.

4.    Also on April 17, 2007, government counsel gave notice to defendant by letter (which was faxed to defense counsel) that

the government expects to call an expert witness to testify about

the functioning, uses, and capabilities of the internet,

including, among other things, an explanation of the use of

email, instant messaging, chat rooms, and web groups, as well as

the downloading and uploading of files and the posting of shared

files (an "internet expert"), as well as another expert witness

to testify concerning the "grooming," *i.e.*, the contacting and

gaining the trust of a child victim and, at times, the child

victim's parent(s) and/or guardian(s), in order to gain access to

the child for the purpose of engaging in, or attempting to engage

in, sexual or other inappropriate acts with the child victim (a

"grooming expert").  In that same notice, the government also

indicated that it had not yet determined, finally, who would be

called to testify concerning the above topics, but that the

identities and qualifications of the witnesses would be disclosed

immediately upon a final determination and that the April 17

notice was being provided so that defendant had the maximum

amount of notice regarding the topics upon which the government

then contemplated presenting expert testimony.

        5.   On April 19, 2007, government counsel provided the

following information to defendant by letter (which was faxed to

defense counsel): (1) a copy of SA Moran's resume; (2) that Bruce

W. Pixley would be the internet expert along with a copy of his

resume, as well as brief biography; and (3) that Federal Bureau

of Investigation ("FBI") Special Agent ("SA") James T. Clemente,

of the FBI's Behavioral Analysis Unit, would be the grooming

expert and indicated that his resume would be forthcoming in the

near future.

6.   The next day, on April 20, 2007, government counsel
provided defendant by letter (which was faxed to defense counsel)
a copy of FBI SSA Clemente's resume.

7.   On or about April 23, 2007, defense counsel filed his
motion to exclude the expert testimony.  During a subsequent
telephone conversation with government counsel, defense counsel
stated that he believed defendant was entitled to more
information regarding the government's expected expert testimony.
During that conversation, government counsel advised defense
counsel that neither Bixley nor FBI SSA Clemente had reviewed the
evidence in this case, nor prepared expert reports.  The
government further advised defense counsel that these witnesses
would not be offering opinions, but rather, providing background
information based on their specialized knowledge that would be
useful to the jurors regarding the internet and the concept of
"grooming."

8.   On April 26, 2007, the government provided to defendant
by letter (which was faxed to defense counsel) the following
additional information: (1) copies of 3 slides that FBI SSA
Clemente has used in prior presentations regarding "grooming;"
and (2) excerpts from an article that FBI SSA Clemente has
reviewed, amongst other materials, in developing his expertise on
"grooming" and that contains information that he will likely
testify about at trial.  In that same letter, the government
noted that the above information was being provided although it
was the government's position that it had already provided
adequate expert disclosure pursuant to the applicable law and
rules.

3

9.   On April 27, 2006, government counsel advised defendant by letter (which was faxed to defense counsel) that ICE SA John Owen would testify about the recovery of chat transcripts from Bekenstein's computer, and that retired ICE SA Ralph Pendleton would testify about the recovery of similar transcripts from Martin's computer.  In that letter, the government also advised defendant that although the notice was styled as expert notice, as with the prior notices regarding ICE SA James Moran, it is the government's position that these witnesses will be testifying as percipient fact witnesses and that expert notice is not required.

10.   In April 2005, the government produced to defendant copies of multiple reports prepared by ICE SA Moran pertaining to his forensic review of defendant's media.  More recently, on April 27, 2007, at the recent request of defense counsel, the government produced to defendant (by fax to defense counsel) a copy of a report prepared by retired ICE SA Pendleton regarding the forensic review of Martin's computer.

11.   Also at defense counsel's recent request, government counsel is trying to determine whether a report exists documenting the recovery of the chat transcripts from Bekenstein's computer.  If such a report exists, the government will promptly produce it.  Of note, copies of these transcripts were produced to defendant years ago and only very recently did he make this request.  Furthermore, to the extent there is no report, the government is prepared to make ICE SA Owen available to defense counsel prior to trial to inquire about his recovery of these transcripts.

12.   Having just recently confirmed that ICE SA Owen and

4

retired ICE SA Pendleton will be available to testify at trial,
the government expects to produce their resumes to defendant in
the very near future (although, in the mean time, the government
will make them available to defense counsel for inquiry into
their qualifications and experience).

I declare under penalty of perjury that the foregoing is
true and correct to the best of my knowledge and belief.

DATED: April 27, 2007

BRIAN R. MICHAEL

CERTIFICATE OF SERVICE BY MAIL

     I, **HORTENCIA MONTES**, declare:

     That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

     That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on April 27, 2007 I deposited in the United States mails in the United States Courthouse at 312 North Spring Street, Los Angeles, California, in the above-entitled action, in an envelope bearing the requisite postage, a copy of: **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN R. MICHAEL**

Addressed to:
**Jeffrey Aaron, Esq.**
**Blumenthal Law Offices**
**3993 Market Street**
**Riverside, CA 92501**

at **his** delivery service by United States mail.

     This Certificate is executed on April 27, 2007 at Los Angeles, California.

     I certify under penalty of perjury that the foregoing is true and correct.

                                                    _____
                                                    **HORTENCIA MONTES**